UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PHARMACY EXPRESS, LLC | * | CIVIL ACTION NO. 22-01979 |
| | * | |
| VERSUS | * | JUDGE: NANNETTE JOLIVETTE BROWN |
| | * | |
| OHIO SECURITY | * | MAGISTRATE: MICHAEL B. NORTH |
| INSURANCE COMPANY | * | |
| | * | |

## OHIO SECURITY INSURANCE COMPANY'S
## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Ohio Security Insurance Company ("Ohio Security") respectfully submits this opposition to the motion to remand filed by plaintiff (R. Doc. 7). As detailed herein, Ohio Security's notice of removal (R. Doc. 1) establishes that it is more likely than not (i.e., by a preponderance of the evidence) that the amount-in-controversy of this declaratory judgment action exceeds $75,000, and federal jurisdiction is proper. Plaintiff's motion to remand asks this Court to look solely at its damages for which there is a known price tag while ignoring (i) the totality of plaintiff's property damages claim, (ii) plaintiff's business interruption claim, (iii) any penalties based on those claims, and (iv) plaintiff's claim for attorneys' fees. The law on removal, while strict, is not as narrow as plaintiff argues. The Court should deny plaintiff's motion to remand and maintain jurisdiction over this matter.

## BACKGROUND

### I.     The Policy.

Plaintiff operates a pharmacy in Houma, Louisiana. Petition (R. Doc. 1-1) at ¶ 1. Ohio Security issued commercial policy number BZS 60543530 to plaintiff insuring the pharmacy against certain perils. *See* Policy (R. Doc. 1-3). The policy provides coverage limits of $113,538

for damage to the building, $255,000 for damage to business personal property, and limited coverage for business interruption.[1]  *Id*.  The deductible is $1,000.  *Id*.

The policy contains an endorsement, the Windstorm or Hail Exclusion, excluding property damage caused by windstorm or hail:

THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WINDSTORM  OR HAIL EXCLUSION

This endorsement  modifies  insurance  provided  under  the  following:

    BUSINESSOWNERS  COVERAGE FORM

All  other  terms  and  conditions  applicable  to  SECTION I  PROPERTY  apply,  except  as  provided  by  this endorsement.

This  endorsement  applies  only  to  the  locations  shown  in  the  Declarations  with  windstorm  or  hail excluded.

the  following  is  added  to  Paragraph  **B.1. Exclusions**  in **Section I** Property:

    **Windstorm  or Hail**

      We  will  not  pay  for  loss  or damage  caused  directly  or  indirectly  by  Windstorm  or  Hail, regardless  of any  other  cause  or  event  that  contributes  concurrently  or  in  any  sequence  to  the  loss  or  damage. For  example,  if  loss  or  damage  from  a  covered  weather  condition  other  than  windstorm  or  Hail  also occurs,  and  that  loss  or  damage  would  not  have  occurred  but  for  the  Windstorm  or  Hail,  such  loss or  damage  shall  be  considered  to  be  caused  by  Windstorm  or  Hail,  and  therefore  part  of  the excluded  Windstorm  or Hail  occurrence.

All  other  provisions  of  this  policy  apply.

*Id*.  In the policy declarations, the property at issue –1963 Prospect Blvd., Houma, Louisiana 70363 – is shown as having windstorm and hail coverage excluded.  *Id*.

## II.    The Claim.

Plaintiff reported a Hurricane Ida claim on September 3, 2021. Petition (R. Doc. 1-1). Liberty inspected the property on September 7, 2021, finding that the roof was ripped off the

---

[1]    The policy contains a Businessowners Property Endorsement that provides limited business interruption coverage in three scenarios: Loss of Business Income Due to Off Premises Power Failure (up to the limit of $10,000), Loss of Business Income from a Dependent Property (up to the limit of $50,000), and Loss of Business Income at Newly Acquired Locations (up to the limit $250,000).  *Id*.  However, for each of these limited coverages, the loss must be caused by a "Covered Cause of Loss."  *See id*.  Because of the Windstorm or Hail Exclusion, it is Ohio Security's position that there is no coverage because Hurricane Ida is not a "Covered Cause of Loss."

structure, allowing water to enter the interior of the building, damaging the building and its contents.

Ohio Security denied coverage for plaintiff's hurricane claim based on the policy's Windstorm or Hail Exclusion. On May 13, 2022, plaintiff filed its petition in the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana. *See* Petition (R. Doc. 1-1). The petition asserts that "on August 29, 2022, the insured premises was damaged when Hurricane Ida swept through Houma, Louisiana, causing both ***extensive*** flooding from precipitation and also ***severe*** wind damage." *Id*. at ¶ 9 (emphasis added). The petition further alleges that "Hurricane Ida resulted in ***massive*** property damage to the insured premises and in the Pharmacy shutting down in the immediate aftermath of the hurricane." *Id*. (emphasis added). Plaintiff notes that Ohio Security issued commercial property policy no. BZS 60543530, which provides coverage for "property damage as well as business income losses." *Id.* at ¶ 10.

<u>**ARGUMENT**</u>

I.   <u>**Legal Standard.**</u>

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When federal jurisdiction is based on diversity of citizenship, the case must be between "citizens of different States," and the amount in controversy must exceed "$75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1). The removing party must show, by a preponderance of the evidence, that (1) complete diversity of citizenship exists between the parties, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. *Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 638 (5th Cir. 2003). In this action, there is no dispute that complete diversity exists, and plaintiff's motion focuses solely on the amount-in-controversy requirement.

The removing party may meet its burden of showing that the amount-in-controversy exceeds $75,000 either (1) by demonstrating that it was "facially apparent" from the allegations of the state court petition that the amount in controversy exceeded the $75,000 jurisdictional threshold, or (2) by offering summary-judgment type evidence that support a finding that the amount-in-controversy exceeds $75,000. *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). Here, it is apparent from the allegations of the petition that the amount-in-controversy more likely than not exceeds $75,000, and Ohio Security also has offered summary-judgment type evidence that the amount-in-controversy exceeds $75,000.

II.     **The amount-in-controversy exceeds $75,000.**

Under Fifth Circuit precedent, "in declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, 'the jurisdictional amount in controversy is measured by the value of the underlying claim.'" *Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 911 (5th Cir. 2002). When determining the amount-in-controversy in declaratory judgment actions, district courts also consider potential bad faith penalties and fees on the amount of the contractual claim even if a bad faith claim is not explicitly alleged in the petition seeking the declaratory judgment. *Bienemy v. Am. Sec. Ins. Co.*, No. 06-5199, 2006 WL 2925454, at *2 (E.D. La. Oct. 10, 2006) ("When the issue is a declaratory judgment regarding the coverage provided by an insurance policy, the object of the litigation is the insurer's total potential liability, including the insurer's contractual liability under that policy, plus any penalties allowed by state law.").

A.  **It is facially apparent that the amount-in-controversy exceeds $75,000.**

Plaintiff incorrectly argues that, to establish that the amount-in-controversy exceeds $75,000, Ohio Security is required to provide mathematical calculations that exceed $75,000. *See* Motion to Remand (R. Doc. 7) at p. 2. Because Ohio Security provided a calculation of damages

totaling "only" $69,378.90, plaintiff argues, Ohio Security has failed to establish the amount-in-controversy.  Plaintiff is incorrect.

The law does not require Ohio Security to **calculate** with mathematical precision damages exceeding $75,000; Ohio Security is only required to show, by a preponderance of the evidence, that the amount-in-controversy exceeds $75,000.  In *Luckett v. Delta Airlines, Inc*., 171 F.3d 295 (5th Cir. 1999), the Fifth Circuit held that the amount-in-controversy requirement was "facially apparent" when the plaintiff "alleged damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework." *Id.* at 298.  The Fifth Circuit did not require the removing defendant to calculate those damages.  *See id.*  Similarly, in *Gebbia v. Wal-Mart Stores, Inc*., 233 F.3d 880, 883 (5th Cir. 2000), even though the plaintiff did not allege specific monetary damages and the defendant did not calculate any such damages, the Fifth Circuit concluded that it was facially apparent that the plaintiff's claimed damages in a slip-and-fall lawsuit exceeded $75,000 when the plaintiff alleged wrist, knee, and back injuries and sought damages for medical expenses, pain and suffering, loss of wages and earning capacity, and permanent disability and disfigurement).  *See also Dewey Bellows Operating Co., Ltd. v. Admiral Ins. Co*., No. 14-0042, 2014 WL 12599400, at *1 (S.D. Tex. Sept. 3, 2014) (explaining that "[a]lthough no specific amount of damages is set forth in the Texas Lawsuit, it is apparent from the face of the petition that the claims are likely to exceed $75,000.00" where petition alleged wrongful death claim).  In other words, the removing party is not required to attach hard numbers to each and every aspect of the plaintiff's claim, but only is required to show that, based on the type an severity of the alleged damages, the damages more-likely-than-not exceed $75,000.  The same reasoning endorsed by the Fifth Circuit in *Luckett* and *Gebbia* applies to plaintiff's claim here.

In the petition, plaintiff alleges that Hurricane Ida "resulted in ***massive property damage***
to the insured premises and in the Pharmacy shutting down in the immediate aftermath of the
hurricane." Petition (R. Doc. 1-1) at ¶ 9. The "insured premises" is a drug store. *Id*. at ¶1. Plaintiff
asserted a claim for damage to its building, damage to business personal property, and business
interruption. *See id.* at 9, 10, 18, 25. Plaintiff also correctly notes that Ohio Security has not paid
anything on this claim (because the policy excludes losses for windstorms, such as hurricanes).
*Id.* at ¶ 18.

The allegation of "massive property damage" to a commercial business like a pharmacy,
along with an allegation of that the business completely shut down because of hurricane damage,
is no different for the purpose of establishing that the amount-in-controversy requirement is
satisfied than the allegations of significant bodily injuries in *Gebbia* and *Luckett*. Based on
plaintiff's allegations, it is more likely than not (i.e., by a preponderance of the evidence) that the
amount-in-controversy exceeds $75,000. The Court should deny plaintiff's motion to remand.

**B. The summary-judgment evidence establishes that the amount-in-controversy exceeds
$75,000.**

Even if the Court finds that it is not "facially apparent" from the petition that the amount-
in-controversy exceeds $75,000, Ohio Security submitted summary-judgment-style evidence
showing that it is more likely than not that the amount-in-controversy exceeds $75,000. First,
Ohio Security submitted a copy of its policy showing coverage limits of $113,538 for damage to
the building, $255,000 for damage to business property, and up to $50,000 for business
interruption. *See* Policy (R. Doc. 1-3). Because Ohio Security has paid plaintiff nothing (due to
the Windstorm or Hail Exclusion), the entire limits are potentially recoverable by plaintiff.
Second, Ohio Security submitted authenticated photographs of the "massive property damage"
alleged by plaintiff in its petition. *See* Photographs (R. Doc. 1-4); Petition (R. Doc. 1-1) at ¶ 9.

The photographs show extensive roof damage, collapsed ceilings covering personal property, mold growth on interior walls, interior water damage, etc. *Id.* The extent of the widespread hurricane damage is evidence that the amount-in-controversy exceeds $75,000. Third, Ohio Security attached estimates from plaintiff for a ***portion*** of the repairs totaling $46,252.60. Proposals (R. Doc. 1-5). The estimates include (i) removal of cabinets, shelving, ceiling tiles, sheetrock, and insulation ($4,800), (ii) replacement of damaged pharmacy equipment ($6,962.72), (iii) replacement of a server ($2,800), and (iv) installation of countertops and shelving ($31,689.88). Notably, the estimates do ***not*** include replacement of the ceiling tiles, sheetrock, and insulation (for which a removal estimate was submitted), and the estimates do not include repair/replacement of the damaged roof that allowed for the water intrusion necessitating the aforementioned repairs. *See id.* When those additional damages are accounted for, it is more likely than not that the damages exceed $75,000, especially when considering bad faith penalties and fees on those amounts (see below).[2]

Moreover, in addition to property damage, as plaintiff concedes in its motion to remand, plaintiff also seeks coverage for business interruption because the hurricane damage forced plaintiff's pharmacy to close. R. Doc. 7-1 at p. 9. The business interruption damages also must be considered in determining whether it is more likely than not that plaintiff's claim exceeds

---

[2] For example, without consideration of replacement of the ceiling tiles, sheetrock, and insulation and repair/replacement of the damaged roof, the estimated damages total $46,252.60. Plaintiff concedes a 50 percent penalty on that amount can be considered when determining whether the amount-in-controversy is met. *See* Motion to Remand (R. Doc. 7) at p. 2. If the replacement of the ceiling tiles, sheetrock, and insulation and repair/replacement of the roof more likely than not exceeds $3,747.41, the dispute on the policy alone will be $50,001. A 50 percent penalty under La. R.S. 22:1892 would be $25,000.50, and the amount-in-controversy would exceed $75,000. Of course, it is apparent (and certainly more likely  than not) that replacement of the ceiling tiles, sheetrock, and insulation and repair/replacement of the roof will cost significantly more than $3,741.41.

$75,000.  When these potential business interruption damages are considered along with the estimates for partial repairs totaling $46,252.60 and the understanding of the repairs for which there is no estimate (such as repairs to the roof), the amount-in-controversy exceeds the $75,000 requirement.

**C.  A potential claim for bad faith penalties and attorneys' fees must be considered.**

It is well-established that penalties and attorneys' fees are included in determining the amount-in-controversy for purposes of diversity jurisdiction.  *See Manguno v. Prudential Prop. & Cas. Ins. Co*., 276 F.3d 720, 723 (5th Cir. 2002) ("If a state statute provides for attorney's fees, such fees are included as part of the amount in controversy."); *Malone v. Scottsdale Ins. Co*., No. 12-1508, 2012 WL 6632440, at *3 (E.D. La. Dec. 19, 2012) ("Claims for attorney's fees and penalties that may be awarded pursuant to state statutes are considered in determining whether the amount in controversy requirement has been satisfied."); *Randall v. State Farm Fire & Cas. Co*., No. 11-1358, 2011 WL 3204705, at *2 n. 17 (E.D. La. July 27, 2011).

Although not explicitly alleged in plaintiff's petition, bad faith penalties and attorneys' fees can be considered when determining whether the amount-in-controversy requirement is met in a declaratory judgment action.  In *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252-3 (5th Cir. 1998), the Fifth Circuit held that district court can and should consider potential bad faith claims when determining whether a declaratory judgment action meets the amount-in-controversy requirement, even when no bad faith claim is mentioned in the declaratory judgment action itself. Citing to *St. Paul*, the Eastern District has explained that "[w]hen the issue is a declaratory judgment regarding the coverage provided by an insurance policy, the object of the litigation is the insurer's total potential liability, including the insurer's contractual liability under that policy, plus any penalties allowed by state law." *Bienemy v. Am. Sec. Ins. Co*., No. 06-5199, 2006 WL

2925454, at *2 (E.D. La. Oct. 10, 2006) ("Adding the plaintiff's claim of $65,966 and the mandatory statutory penalties, the defendant can prove by a preponderance of the evidence that the claim is valued over $75,000, meeting the amount-in-controversy requirement for diversity jurisdiction.").

Plaintiff seemingly concedes in its motion to remand that a 50 percent penalty under Louisiana Revised Statute 22:1892 can be considered in this case, but plaintiff asserts that the Court cannot consider any attorneys' fee award because "there [is] no evidence justifying or quantifying such fees" and "Ohio Security has referenced the possibility of an attorney fee award with no price tag attached." R. Doc. 7-1 at p. 11.  This is incorrect.  As Ohio Security addressed in its notice of removal, a recent decision in a commercial property hurricane damage case from the Western District awarded a 20 percent attorneys' fee on the amount due to the plaintiff (the policy amount plus the 50 percent attorney fee).  *See* R. Doc. 1 at p. 7; *Eaux Holdings LLC v. Scottsdale Ins. Co.*, No. 20-01582, 2022 WL 951529, at *2 (W.D. La. Mar. 29, 2022), amended, No. 20-01582, 2022 WL 2393605 (W.D. La. July 1, 2022).  Based only on the estimates for a portion of the repairs (totaling $46,252.60) plus a 50 percent penalty on that amount ($23,126.30), the amount in dispute is $69,378.90 (as plaintiff recognizes in its motion to remand).  A 20 percent fee on $69,378.90 is $13,875.78, which would put the amount in dispute at $83,254.68.  Even a minimal 10 percent attorneys' fee of $6,937.89 pushes the amount in dispute above $75,000 (to $76,316.79).

To establish federal jurisdiction, Ohio Security is not required to prove with exact certainty that plaintiff's potential attorneys' fee award swells the amount in dispute over $75,000.  Ohio Security is only required to prove that it is more likely than not that the amount-in-controversy exceeds $75,000.  Based solely on the $46,252.60 in **partial** repair estimates, a 50 percent penalty,

and a 10 percent attorneys' fee award, the amount-in-controversy requirement of diversity jurisdiction is established by a preponderance of the evidence.

**III.   <u>Plaintiff's cited cases are distinguishable.</u>**

Plaintiff relies heavily on this Honorable Court's decision in *Lottinger v. State Farm Fire & Cas. Co.*, No. 13-6193, 2014 WL 4403440 (E.D. La. Sept. 5, 2014).  In *Lottinger*, the defendant-insurer removed a homeowners claim to federal court based on a public adjuster estimate totaling $45,748.50.  *Id.*, at *1.  This Court recognized that a potential 50 percent penalty under Louisiana Revised Statute 22:1892 on this amount ($22,874.25) could be considered to raise the amount-in-controversy to $68,622.75.  *Id.*, at *10.  Fatal to the removal was this Court's finding that "State Farm does not provide a basis upon which the Court can close the gap [between $75,000 and $68,622.75]."  *Id.*  Here, Ohio Security has provided multiple bases with which to close the gap between $69,378.90 and $75,000.

As an initial matter, *Lottinger* concerned a homeowners claim in which the insurer had already made payments to the insured.  *Id.*, at *1.  The petition alleged "that State Farm failed to provide 'a sufficient amount of any money,' and consequently is liable to [plaintiff] under theories of: (1) 'breach of contract'; (2) 'breach of duty of good faith and fair dealing'; (3) 'bad faith claims adjusting'; and (4) 'any and all other legal theories which may be found through discovery and proven at trial in this matter.'"  *Id.*  Here, plaintiff is a commercial business – a pharmacy – that sustained "***massive*** property damage to the insured premises and [resulted] in the Pharmacy shutting down in the immediate aftermath of the hurricane."  Petition (R. Doc. 1-1) at ¶ 9 (emphasis added).  The scope of the alleged damage is broader in this case.

More importantly, the *Lottinger* defendant based the amount-in-controversy on a public adjuster estimate for all of the remaining repairs to the plaintiff's property.  *Lottinger*, 2014 WL

4403440, *1.  In other words, in Lottinger, the defendant relied on an estimate that capped the plaintiff's contractual damages at $45,748.50.  Here, plaintiff provided Ohio Security estimates for only **a portion** of the repairs as well as photographs establishing the extent of damage and repairs necessary.[3]  Estimates for only **some** of these repairs totals $46,252.60. Furthermore, plaintiff seeks coverage for business interruption damages, which also must be considered in addition to the building damages.

Finally, unlike in *Lottinger*, Ohio Security has "bridged the gap" with a potential attorneys' fee alone.  "[E]ven though the general rule is that interest and court costs are not includable in calculating the amount in controversy, attorney's fees are includable when the state statute allowing cost shifting expressly defines the allowable expenses of litigation to include attorney's fees, especially when the plaintiffs expressly pray for recovery of costs."  *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 873-74 (5th Cir. 2002).  Courts do not require attorneys' fee to be calculated with specificity.  For example, in *Clay v. State Farm Mut. Auto. Ins. Co.*, No. 19-263, 2019 WL 5616897, at *5 (M.D. La. Oct. 15, 2019), *report and recommendation adopted*, No. 19-263, 2019 WL 5596407 (M.D. La. Oct. 30, 2019), the Middle District found that the amount-in-controversy was satisfied where "State Farm would only have to recover a nominal amount in attorney's fees to exceed the jurisdictional amount."  In a hurricane case involving a commercial property, the Western District recently awarded the plaintiff a 20 percent attorneys' fee award. *Eaux Holdings LLC v. Scottsdale Ins. Co.*, No. 20-01582, 2022 WL 951529, at *2 (W.D. La. Mar. 29, 2022), amended, No. 20-01582, 2022 WL 2393605 (W.D. La. July 1, 2022).  Like *Eaux Holdings*, this is a hurricane claim involving a commercial property.  A 20 percent – or even 10

---

[3]   It also is evident from the partial estimates that additional repairs are needed.  For example, plaintiff provided an estimate for removal of drywall for $4,800 but no estimate for installation of new drywall.

percent – attorneys' fee award "bridges the gap" between the calculated $69,378.90 in damages based on the partial repair estimates and the $75,000.01 needed to establish jurisdiction.

## **CONCLUSION**

Plaintiff's motion to remand concedes that Ohio Security has substantiated that the amount-in-controversy is at least $69,378.90, or $5,621.10 less than $75,000.  Plaintiff also correctly notes that although its petition seeks coverage for both property damage and business interruption – and the Fifth Circuit considers bad faith penalties ***and attorneys' fees*** when determining the amount-in-controversy – the $69,378.90 is based only on estimates for ***partial*** building repairs and penalties attached thereto.  In essence, plaintiff argues that its claims for (i) remaining property damage repairs, including repairs to the roof and replacement of drywall, (ii) business interruption due to the shutdown of the pharmacy, (iii) any potential bad faith penalties on the remaining property damage repairs and the business interruption claim, and (iv) plaintiff's attorneys' fee are more-likely-than-not to be ***less than $5,621.10***.  As detailed herein, plaintiff's position has no merit.  In its notice of removal, Ohio Security has submitted summary-judgment-evidence that the amount-in-controversy exceeds $75,000 by a preponderance of the evidence.  The Court should deny plaintiff's motion to remand.

Respectfully submitted,

*Patrick J. Lorio*
H. Minor Pipes, III, 24603 (T.A.)
Lindsey M. Soboul, 36680
Patrick J. Lorio, 38328
PIPES | MILES | BECKMAN, LLC
1100 Poydras Street, Suite 1800
New Orleans, Louisiana 70163
Telephone: (504) 322-7070
Facsimile: (504) 322-7520
mpipes@pipesmiles.com
lsoboul@pipesmiles.com
plorio@pipesmiles.com

*Attorneys for Ohio Security*
*Insurance Company*